UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS MacARTHUR,

        Petitioner,

                             CASE NO. 2:13-CV-11307

  v.                       CHIEF JUDGE GERALD E. ROSEN

                             MAGISTRATE JUDGE PAUL J. KOMIVES

CINDI CURTIN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    *Sentencing (Claims I-IV, VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    *Guidelines Scoring (Claims I & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Individualized Sentencing (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        3.    *Illegal Sentence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            a. Proportionality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            b. Judicial Factfinding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            c. Inaccurate Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        4.    *Habitual Offender (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    E.    *Breach of Plea Agreement (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    F.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

\*       \*       \*       \*       \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.   REPORT:

A.      *Procedural History*

1.      Petitioner Douglas MacArthur is a state prisoner, currently confined at the Oaks Correctional Facility in Manistee, Michigan.

2.      On December 14, 2010, petitioner was convicted of assault with intent to commit sexual penetration, MICH. COMP. LAWS § 750.520g(1); five counts of third degree criminal sexual conduct (CSC-III), MICH. COMP. LAWS § 750.520d(1)(b); and interfering with electronic communications, MICH. COMP. LAWS § 750.540(5)(a), pursuant to his guilty plea in the Genesee County Circuit Court.  On February 14, 2011, he was sentenced to a term concurrent terms of 10-15 years' imprisonment on the assault conviction, 15-22½ years' imprisonment on each CSC conviction, and 2-3 years' imprisonment on the electronic communications conviction.

3.      Petitioner, through counsel, sought leave to appeal in the Michigan Court of Appeals, raising the following claims:

> I.      THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT SCORED 10 POINTS ON OV-3 AND 10 POINTS ON OV-4; AS TO THE SCORING OF OV-4, ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THIS COURT SHOULD REVIEW THIS ISSUE.

> II.     THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT FAILED TO TAKE INTO ACCOUNT ALL MITIGATING EVIDENCE IN SENTENCING THE DEFENDANT; ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THIS COURT SHOULD REVIEW THIS ISSUE.

> III.    THE TRIAL COURT UNLAWFULLY VIOLATED THE UNITED STATES AND MICHIGAN CONSTITUTIONS IN SENTENCING THE DEFENDANT TO A PRISON TERM OF 10-15 YEARS ON THE HABITUAL OFFENDER 2d SUPPLEMENT ARISING OUT OF THE ASSAULT WITH INTENT TO COMMIT CRIMINAL SEXUAL

2

PENETRATION CONVICTION, TO PRISON TERMS OF 15 YEARS TO 22-1/2 YEARS ON THE HABITUAL OFFENDER 2d SUPPLEMENT ARISING OUT OF THE CSC 3 CONVICTIONS, AND TO A PRISON TERM OF 2-3 YEARS ON THE HABITUAL OFFENDER 2d SUPPLEMENT ARISING OUT OF THE INTERFERING WITH ELECTRONIC COMMUNICATIONS CONVICTION; ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THIS COURT SHOULD REVIEW THIS ISSUE.

Petitioner filed a *pro per* supplemental brief, raising three additional claims:

I.     THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT SCORED 15 POINTS ON O.V. 8, AND 15 POINTS ON O.V, 19, 20 POINTS ON P.R.V. 2, AND 20 POINTS ON P.R.V. 7.   ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THIS COURT SHOULD REVIEW THIS ISSUE.

II.    THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT ALLOWED A BREACH IN THE PLEA BARGAIN TO TAKE PLACE AT SENTENCING.   ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THIS COURT SHOULD REVIEW THIS ISSUE.

III.   THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT ALLOWED THE DEFENDANT TO BE CHARGED AS AN HABITUAL WHEN THE PROPER HABITUAL WAS NOT BROUGHT WITHIN THE CORRECT TIME LIMIT.   ON PLAIN ERROR AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THIS COURT SHOULD REVIEW THIS ISSUE.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. MacArthur*, No. 308190 (Mich. Ct. App. June 19, 2012).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. MacArthur*, 493 Mich. 917, 823 N.W.2d 606 (2012).

3

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 25, 2013.  As grounds for the writ of habeas corpus, he raises the claims that he raised in the state courts.

6.      Respondent filed her answer on September 30, 2013.  She contends that petitioner's claims are without merit.

7.      Petitioner filed a reply to respondent's answer on December 5, 2013.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from his sexual assault of the 20-year-old daughter of his girlfriend.  On the day scheduled for trial, petitioner entered a plea pursuant to an agreement with the prosecutor.  The prosecutor explained the terms of the agreement to petitioner and the trial court:

> The offer as it stands is that defendant can plead guilty as charged to count one [the assault charge].  Counts two through six will be amended from criminal sexual conduct first degree to criminal sexual conduct second degree–third degree, excuse me.  He will plead guilty as charged to count seven [the communications charge].  He will also acknowledge that he has one prior felony.  But with the amendment it increases his maximum exposure on count one from ten years to fifteen years.  It would decrease the exposure from life to twenty-two and [a] half years on counts two through six.  And on count seven it would increase it from two to three years.
>
> There would be no sentence agreement or recommendation.  He will take the sentence as the Judge imposes it.  We have gone over the guidelines and we essentially agree that the max (inaudible).

Plea Tr., at 4.  Trial counsel then engaged in an extensive colloquy with petitioner, explaining the terms of the agreement, his likely sentence exposure under the guidelines as estimated by the parties, his maximum sentence exposure, and his sentence exposure if he chose to go to trial.  Petitioner indicated that he understood the terms of the agreement and the various sentencing ramifications, and that he wished to plead guilty.  *See id.* at 4-7.  The prosecutor again placed the plea agreement on the record, and petitioner indicated that he understood the agreement and that the prosecutor's description was complete and accurate.  *See id.* at 7-8.  After the prosecutor read the charges, the court explained

the maximum sentence petitioner faced on each charge. Petitioner indicated that he understood the charges and the potential maximum sentences. *See id*. at 9-12. The trial court then explained each of the rights petitioner would give up by pleading guilty; petitioner indicated that he understood those rights and that he was waiving them by pleading guilty. *See id*. at 12-14. Petitioner denied that anyone had promised him anything to induce his plea beyond what was placed on the record, and that anyone had threatened him to secure his plea. *See id*. at 14. After establishing a factual basis for the plea, *see id*. at 16-30, the trial court accepted petitioner's plea. *See id*. at 30.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme]

6

Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

The deferential standard of review set forth in § 2254(d) applies even though the Michigan Court of Appeals did not issue a reasoned decision. As the Supreme Court has explained, an unexplained summary order by a state court is presumed to be a rejection of the claims on the merits,

and the petitioner bears the burden of demonstrating that the rejection was on some basis other than the merits. *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). Here, there is no indication that the Michigan Court of Appeals denied petitioner's application for leave to appeal on any basis other than the merits. On the contrary, the court of appeals explicitly stated that its denial was "for lack of merit in the grounds presented," and the Michigan Court of Appeals has repeatedly held a denial on this basis is "a determination on the merits of the case." *Attorney Gen'l ex rel. Dep't of Treasury v. Great Lakes Real Estate Investment Trust*, 77 Mich. App. 1, 3, 257 N.W.2d 248, 249 (1977); *accord Hoye v. DMC/WSU*, No. 285780, 2010 WL 334833, at *1 (Mich. Ct. App. Jan. 28, 2010) (per curiam); *McCabe v. Miller & Assocs., L.L.P.*, No. 275498, 2007 WL 2935032, at *3 (Mich. Ct. App. Oct. 9, 2007) (per curiam); *People v. Douglas*, 122 Mich. App. 526, 530, 332 N.W.2d 521, 523 (1983). Accordingly, the Michigan Court of Appeals's denial of petitioner's application for leave to appeal "for lack of merit in the grounds presented" constitutes an adjudication on the merits for purposes of § 2254(d). *See Snyder v. Lafler*, No. 09-13773, 2011 WL 309056, at *3 (E.D. Mich. Jan. 27, 2011) (Roberts, J.).

D.    *Sentencing (Claims I-IV, VI)*

The bulk of petitioner's habeas application challenges the sentences he received on various grounds. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Guidelines Scoring (Claims I & IV)*

Petitioner first contends that the trial court erred in scoring several offense and prior record variables in computing the Michigan sentencing guidelines. The Court should conclude that petitioner is not entitled to habeas relief on these claims. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal

8

habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Moreover, even if this claim were cognizable, petitioner cannot show that the trial court erred in scoring the guidelines. Petitioner first challenges the scoring of OV-3. This offense variable requires the assessment of 10 points if "[b]odily injury requiring medical treatment occurred to a victim," but only 5 points if "[b]odily injury not requiring medical treatment occurred to a victim." MICH. COMP. LAWS § 777.31(1)(d), (e).[1] Here, petitioner admitted that he assaulted the victim and injured her neck and eye, and pictures of her injuries were shown at the plea hearing. *See* Plea Tr., at 27. Petitioner appears to argue that OV-3 was improperly scored because there was no evidence that the victim actually sought medical treatment, and no expert testimony showing that her injuries

---

[1]OV 3 also provides for an assessment of either 100 or 50 points if a victim was killed, 25 points if life threatening or permanently incapacitating injury was inflicted, and 0 points if no injury occurred. *See* MICH. COMP. LAWS § 777.31(a)-(c), (f). Neither petitioner nor respondent here, nor the parties in state court, argued that any of these provisions was applicable. Thus, the only question was whether OV 3 should have been scored at 10 points or 5 points.

9

required medical treatment.  Neither was required, however, to score OV-3 at ten points.  The statute explicitly provides that "[a]s used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment."  MICH. COMP. LAWS § 777.31(3). And in scoring OV-3, the trial court may draw reasonable inferences from known facts regarding the nature of the victim's injury, and the need for medical treatment need not be supported by expert testimony.  *See People v. Alderman*, No. 281665, 2009 WL 691846, at *1 (Mich. Ct. App. Mar. 17, 2009) (per curiam).

Petitioner next challenges the scoring of OV-4.  This offense variable requires the assessment of 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim." MICH. COMP. LAWS § 777.34(1)(a).  As with OV-3, "[i]n making this determination, the fact that treatment has not been sought is not conclusive."  MICH. COMP. LAWS § 777.34(2).  Here, the victim informed the probation officer who prepared the presentence report that the rape "caused her a lot of emotional problems that she will continue living in fear when the defendant is released from prison." Sentence Tr., at 13.  These statements from the victim regarding the psychological impact of the crime on her were sufficient to support the scoring of OV-4.  *See People v. Gibbs*, 299 Mich. App. 473, 493, 830 N.W.2d 821, 831 (2013); *People v. Williams*, 298 Mich. App. 121, 124, 825 N.W.2d 617, 673 (2012).

Petitioner next challenges the scoring of OV-8.  OV-8 instructs the sentencing court to score 15 points if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense."  MICH. COMP. LAWS § 777.38(1)(a).  At the preliminary examination, the victim testified that when a car approached and petitioner noticed police officers nearby, petitioner laid her on the ground and put his hand over her mouth to prevent her from calling out for help.  *See* Prelim. Exam. Tr., at 10-11.  The Michigan Court

of Appeals "has held that a victim is asported to a place or situation of greater danger when she is moved away from the presence or observation of others." *People v. Preston*, No. 298796, 2012 WL 5853223, at *8 (Mich. Ct. App. Oct. 30, 2012) (citing *People v. Steele*, 283 Mich. App 472, 491, 769 N.W.2d 256 (2009)). The victim's testimony that petitioner moved her to the ground to avoid detection was sufficient to constitute asportation. Further, the fact that petitioner took the victim to the park in the first place was sufficient to find asportation under OV-8. Asportation under OV-8 can be found even if no force was used to accomplish the asportation, and the victim voluntarily accompanied petitioner to the place of greater danger. *See People v. Spanke*, 254 Mich. App. 642, 645-48, 658 N.W.2d 504, 507-08 (2003).

Petitioner also argues that the trial court improperly assessed 15 points under OV-19. This offense variable requires the assessment of 15 points if "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services[.]" MICH. COMP. LAWS § 777.49(b). As noted above, the victim testified that petitioner laid her on the ground and covered her mouth when petitioner noticed police officers in the vicinity. The phrase "interference with the administrative of justice" as used in OV-19 encompasses acts which hinder the police in the investigation of a crime. *See People v. Barbee*, 470 Mich. 283, 287-88, 681 N.W.2d 348, 351 (2004). Petitioner's act of placing his hand over the victim's mouth to prevent her from alerting nearby police officers to the crime was therefore sufficient to support the scoring of OV-19.

Petitioner also challenges the trial court's scoring of two prior record variables (PRV). First, petitioner challenges the scoring of PRV-2. This prior record variable requires, *inter alia*, the scoring of 20 points if "[t]he offender has 3 prior low severity felony convictions." MICH. COMP. LAWS §

11

777.52(1)(b).  The presentence investigation report, which is attached to petitioner's application, indicates that among other convictions petitioner had prior convictions for third degree home invasion, discharging a firearm from a vehicle, and felony firearm.  Third degree home invasion is a Class E offense, *see* MICH. COMP. LAWS § 777.16f, and discharging a firearm from a vehicle is a Class F offense, *see* MICH. COMP. LAWS § 777.16m, rendering them both "low severity felony convictions" under PRV-2.  *See* MICH. COMP. LAWS § 777.52(2)(a).  The felony firearm conviction is not listed in the offense classes, but constitutes a "low severity felony conviction" because it is not listed in the offense classes and provides for a maximum sentence of less than 10 years.  *See* MICH. COMP. LAWS § 777.52(2)(c); *see also*, *People v. Williams*, No. 288704, 2010 WL 4671107, at *8 (Mich. Ct. App. Nov. 18, 2010) (per curiam).  Thus, PRV-2 was properly scored.

Likewise, the trial court did not err in scoring PRV-7.  This variable requires the scoring of 20 points if "[t]he offender has 2 or more subsequent or concurrent convictions."  MICH. COMP. LAWS § 777.57(1)(a).  The statute explicitly directs the court to "[s]core the appropriate point value if the offender was convicted of multiple felony counts."  MICH. COMP. LAWS § 777.57(2)(a).  Here, petitioner was convicted of seven felony counts, and he thus had "2 or more . . . concurrent convictions."  PRV-7 was therefore correctly scored.  Because petitioner's sentencing claims are not cognizable, and because in any event the guidelines were properly scored, the Court should conclude that petitioner is not entitled to habeas relief on his guideline scoring claims.

2.    *Individualized Sentencing (Claim II)*

In his second claim, petitioner contends that the trial court failed to properly individualize his sentence by considering all mitigating evidence.  Although the Supreme Court has held that individualized sentencing is required in the death penalty context, *see, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), these cases "have

12

repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citing *Eddings v. Oklahoma*, 455 U.S. 104, 110-112 (1982); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *Lockett v. Ohio*, 438 U.S. 586, 602-05 (1978); *Woodson*, 428 U.S. at 303-05). Based on these cases, the *Harmelin* Court explicitly declined to extend the individualized sentencing requirement to non-capital cases. *Harmelin*, 501 U.S. at 996 ("We have drawn the line or required individualized sentencing at capital cases, and see no basis for extending it further."); *see also*, *id*. at 1006 (Kennedy, J., concurring). In particular, "no violation of a petitioner's Eighth Amendment or due process or equal protection rights occurs when the trial court does not consider mitigating factors during sentencing in a non-capital case." *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995); *accord United States v. Holman*, 289 Fed. Appx. 680, 680 (5th Cir. 2008) (citing *Harmelin*, 501 U.S. at 995) ("The Constitution does not . . . provide for the presentation of mitigating evidence in noncapital cases."); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990) (defendant in a noncapital case "does not have a constitutional right to present evidence of mitigating circumstances prior to his sentencing."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

   3.    *Illegal Sentence (Claim III)*

In his third claim, petitioner raises an amalgam of arguments challenging the legality of his sentences. Much of the argument with respect to this claim reiterates the guidelines scoring and mitigating evidence claims discussed above. Petitioner also argues in this claim that his sentence was disproportionate to his offense, was based on facts found by the trial court, and was based on inaccurate information. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

13

### a. Proportionality

Petitioner argues that his sentence is disproportionate to his offense.  To the extent that petitioner relies on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), his claim is solely one of state law which is not cognizable on federal habeas review.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.).  To the extent petitioner claims that his sentence violates the Eighth Amendment, the claim is without merit.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id*. at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth

14

Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005-06.[2] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court

---

[2] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

15

that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.)

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id*. at 36-37 (opinion of Breyer, J.).  Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v.*

16

*DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground. Petitioner was sentenced to an aggregate term of 15-22½ years' imprisonment for a forcible rape in which he assaulted the victim, digitally penetrated her vagina and anus, and engaged in forcible intercourse and fellatio. *See* Plea Tr., at 21-22. Petitioner struck the victim, *see id*. at 26-27, and tried to prevent her from calling the police. *See id*. at 23-24. Under these circumstances, petitioner's sentence was not so grossly disproportionate to his offense that it violates the Eighth Amendment. *See, e.g.*, *Sandoval v. Acevedo*, 996 F.2d 145, 151 (7th Cir. 1993) (upholding 15 year sentence imposed for conviction of rape not involving serious injury); *United States ex rel. Webster v. DeTella*, 965 F. Supp. 1124, 1133 (upholding sentence of 60 years for second conviction of aggravated sexual assault); *United States v. Myers*, 22 M.J. 649, 650 (A.C.M.R. 1986) (sentence of 20 years for rape and forcible sodomy not inappropriately severe under Uniform Code of Military Justice); *cf. Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam) (40 year prison term and $20,000 fine imposed for possession and distribution of nine ounces of marijuana not unconstitutional). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. *Judicial Factfinding*

Petitioner next contends that his sentence was illegal because it was based on facts found by the trial judge and to which he did not admit in entering his plea, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for

17

a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original). Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 233, 237-43.

*Blakely* and *Apprendi*, however, are inapplicable here. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within

18

which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely,* the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the armed robbery charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum
> authorized by the jury's verdict would have been considered an element of an
> aggravated crime–and thus the domain of the jury–by those who framed the Bill of
> Rights.  The same cannot be said of a fact increasing the mandatory minimum (but not
> extending the sentence beyond the statutory maximum), for the jury's verdict
> authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*.

Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes
> involving judicial factfinding entail less judicial discretion than indeterminate
> schemes, the constitutionality of the latter implies the constitutionality of the former.
> This argument is flawed on a number of levels.  First, the Sixth Amendment by its
> terms is not a limitation on judicial power, but a reservation of jury power.  It limits
> judicial power only to the extent that the claimed judicial power infringes on the
> province of the jury.  Indeterminate sentencing does not do so.  It increases judicial
> discretion, to be sure, but not at the expense of the jury's traditional function of finding
> the facts essential to lawful imposition of the penalty.  Of course indeterminate
> schemes involve judicial factfinding, in that a judge (like a parole board) may
> implicitly rule on those facts he deems important to the exercise of his sentencing
> discretion.  But the facts do not pertain to whether the defendant has a legal *right* to
> a lesser sentence–and that makes all the difference insofar as judicial impingement
> upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).  Under this reasoning, it is clear that Michigan's

indeterminate sentencing guideline scheme, under which the maximum is established by statute and

only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment, as

both the Sixth Circuit and the Michigan Supreme Court have repeatedly held.  *See Montes v.

Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir.

2009); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684

N.W.2d at 286 n.14.

This conclusion is not altered by the Supreme Court's more recent decision in *Alleyne v.*

*United States*, 133 S. Ct. 2151 (2013).  In that case, the Court overruled *Harris*, and extended *Apprendi* to facts that increase a mandatory minimum sentence.  Reasoning that the *Harris* Court's distinction between facts that increase the statutory maximum and facts that increase a mandatory minimum is inconsistent with *Apprendi*, the Court in *Alleyne* held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt.  Mandatory minimum sentences increase the penalty for a crime.  It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155 (citation omitted).  The Court was careful to note, however, that its ruling "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* at 2163.  Judges retain broad discretion to impose any sentence within the range authorized by law based on the jury's findings (or the facts admitted in a plea), and may judicially find facts in exercising this discretion.  *See id.*

*Alleyne* is inapplicable here.  *Alleyne* dealt with statutory mandatory minimum sentences, as opposed to facts used to determine the minimum sentence of an indeterminate sentencing scheme such as Michigan's.  Therefore, "[i]t is questionable whether *Alleyne* applies to Michigan's sentencing scheme." *Spears v. Curtin*, No. 1:13-cv-1013, 2013 WL 5636625, at *6 (W.D. Mich. Oct. 16, 2013).  More importantly, even if *Alleyne* now bars judicial factfinding under the Michigan sentencing scheme, it does not constitute "clearly established federal law" under § 2254(d)(1) for purposes of petitioner's claim.  At the time the Michigan Court of Appeals rejected petitioner's *Apprendi* claim, *Alleyne* had not been decided and the Court's decision in *Harris* made clear that the Michigan Court of Appeals's rejection of petitioner's claim was proper.  The rule of *Alleyne* was not clearly established at the time the state courts rejected petitioner's claim, and thus it provides no basis for habeas relief under § 2254(d)(1).  *See Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013);

*Williams v. Smith*, No. 11-15163, 2014 WL 632437, at *7 (E.D. Mich. Feb. 18, 2014) (Lawson, J.,

adopting report and recommendation of Komives, M.J.); *Stockman v. Berghuis*, No. 2:10-CV-14860,

2013 WL 6885121, at *14 (E.D. Mich. Dec. 31, 2013).  Accordingly, the Court should conclude that

petitioner is not entitled to habeas relief on this claim.

### c.  Inaccurate Information

Finally, petitioner is not entitled to relief on his claim that the trial court relied upon inaccurate

information in imposing sentence.  In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v.

Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences

because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy

v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord

Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same).  *See generally*, *Tucker*, 404 U.S.

at 448-49; *Townsend*, 334 U.S. at 740-41.  It is well established, however, that a *Tucker* violation

arises only where the improper information  "actually served as the basis for the sentence." *United

States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner

v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir.

1985).  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit

attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the

information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444,

447).  Thus, to be entitled to habeas relief on this claim  petitioner "must show that the sentencing

court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F.

Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Petitioner does not point to any materially false information that the trial court relied upon in

imposing its sentence.  Rather, petitioner contends that the trial court misscored the guidelines, and

relied on facts to which he did not admit, in imposing its sentence. These arguments raise claims of legal error in imposing sentence, but they do not identify any materially false factual information upon which the trial court relied. Petitioner's challenge, in other words, is to the trial court's various legal determinations; he does not argue that those legal determinations were based on materially inaccurate factual information. Thus, petitioner cannot show that his sentence was based on any materially inaccurate information. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

　　　　4.　　*Habitual Offender (Claim VI)*

　　　　In his sixth claim, petitioner contends that he was improperly sentenced as a second habitual offender because the habitual offender notice filed by the prosecutor was untimely. This claim raises an issue of state law that does not provide a cognizable ground for habeas relief. *See Tolbert v. LeCureaux,* 811 F. Supp. 1237, 1240-1241 (E.D. Mich. 1993). Due process does not require advance notice that a trial on a substantive criminal charge will be followed by an habitual offender charge. As a matter of due process, petitioner was entitled only to reasonable notice of the prosecutor's intent to seek an enhancement based on petitioner's habitual offender status and an opportunity to challenge that status. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). It was clear that petitioner, as part of his plea, would plead to having a prior felony conviction for purposes of habitual offender sentencing. *See* Plea Tr., at 4, 5-6. Petitioner indicated that he understood the agreement, *see id*. at 6. Indeed, this was part of the benefit of the plea deal, as the prosecutor agreed not to seek sentencing of petitioner as a fourth habitual offender. *See id*. at 5-6. Petitioner explicitly admitted that he had a prior felony conviction. *See id*. at 16. Neither petitioner nor his counsel raised any objection to the enhanced penalties at sentencing. The record clearly indicates that petitioner had ample notice of the habitual offender enhancement. Due process required nothing more, *see Oyler*, 368 U.S. at 452-54, and any

23

failure by the prosecutor to comply with the Michigan habitual offender statute raises an issue of state law not cognizable on habeas review. *See Randolph v. Romanowski*, No. 2:06-CV-11201, 2007 WL 4181269, at *11 (E.D. Mich. Nov. 27, 2007) (Cleland, J.); *McCann v. Trombley*, No. 05-CV-72556, 2007 WL 2318730, at *14 (E.D. Mich. Aug. 10, 2007) (Steeh, J., adopting report of Komives, M.J.); *Taylor v. Jones*, No. 05-CV-73909, 2007 WL 1725384, at *12-*13 (E.D. Mich. June 13, 2007) (Edmunds, J.); *Ivory v. Jackson*, No. 04-CV-71279, 2005 WL 1030325, at *9 (E.D. Mich. Apr. 27, 2005) (Roberts, J.).

Moreover, any claim that the habitual offender notice was inadequate is precluded by petitioner's guilty plea. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Petitioner's claim that the prosecution failed to comply with the notice requirements of the habitual offender statutes is an antecedent error that is waived by his guilty plea. *See Randolph*, 2007 WL 4181269, at *11; *Tolbert*, 811 F. Supp. at 1241. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his second and third claims.

Finally, even were this claim cognizable and not waived by petitioner's guilty plea, petitioner could not show that the habitual offender notice was untimely. Petitioner was sentenced as an habitual offender under MICH. COMP. LAWS § 769.12. The Michigan habitual offender statutes

provide, in relevant part:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

MICH. COMP. LAWS § 769.13(1).  On the day of the plea, the prosecution filed an amended information to reflect the charges to which petitioner was pleading guilty.  The habitual offender notice was filed simultaneously, and thus was filed within 21 days of the information to which petitioner pleaded guilty. In fact, the Michigan Supreme Court has recognized that "[t]he statute permits a prosecuting attorney to file a notice of intent to seek an enhanced sentence under the habitual-offender statute after a defendant has entered a plea." *People v. Brown*, 492 Mich. 684, 701, 822 N.W.2d 208, 218 (2012).  Further, the state court docket sheet shows that the prosecutor initially filed a notice seeking enhancement of petitioner's sentence as a fourth habitual offender on October 29, 2009, the same day the prosecutor filed the information and four days before the arraignment in circuit court.  The notice filed on the day of the plea reduced the habitual enhancement sought from a fourth offense to a second offense.  Under Michigan law, the prosecutor may amend an habitual offender notice outside the 21-day period where the amendment does not elevate the habitual offender status and subject the defendant to a higher penalty than set forth in the original notice.  *See People v. Hornsby*, 251 Mich. App. 462, 472-73, 650 N.W.2d 700, 706-07 (2002); *People v. Ellis*, 224 Mich. App. 752, 757 n.2, 569 N.W.2d 917, 919 n.2 (1997).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Breach of Plea Agreement (Claim IV)*

Petitioner also argues that the prosecutor violated the terms of the agreement by arguing at

25

sentencing that he should be sentenced to the maximum allowed by the guidelines.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Id*. at 262.  The Court has subsequently clarified this language, holding that *Santobello* does not apply to every rescinded government promise.  Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507-08, 510 (1984).  Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea.  *See Santobello*, 404 U.S. at 263.  The appropriate remedy is within the trial court's discretion, *see Santobello*, 404 U.S. at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11; *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992).  "[A] federal court sitting in habeas review should  not 'lightly find misrepresentation in a plea agreement.'" *Myers v. Straub*, 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001) (Steeh, J.) (quoting *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000)).  Further, the prosecution is held only to the literal terms of the plea agreement.  *See United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988).  In determining the scope of a plea agreement, the content of the promises made is a question of fact.  *See United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002); *United States v. Doe*, 940 F.2d 199, 202 (7th Cir. 1991).

2.    *Analysis*

Petitioner contends that the prosecutor violated the terms of the agreement by arguing at

sentencing that the court should impose the maximum permitted by the guidelines. Petitioner contends that the prosecutor agreed, as part of the plea bargain, not to recommend any sentence. This argument is without merit. In initially describing the agreement, the prosecutor stated: "There would be no sentence agreement or recommendation. He will take the sentence as the Judge imposes it." Plea Tr., at 4. Although this statement could be read as suggesting that the prosecutor was agreeing not to make any recommendation at sentencing, it can equally be read as indicating that the parties had not agreed jointly on a particular sentencing recommendation. This latter reading is consistent with further explications of the agreement during the plea. When trial counsel explained the agreement to petitioner, he did not suggest that the prosecutor was agreeing to refrain from making any recommendation at sentencing. *See id*. at 5-6. The prosecutor placed the written agreement on the record, and did not state as one of the terms that the prosecutor would make no argument regarding the appropriate sentence. She indicated that the agreement placed on the record at that time was "the complete agreement." *Id*. at 8. Defense counsel indicated that the agreement placed on the record by the prosecutor was his "understanding of the plea agreement," and petitioner indicated that he heard and understood the agreement, and that it was complete and accurate. *See id*. at 8. As explained above, the prosecution is held only to the literal terms of the agreement, and misrepresentation is not lightly to be found. The Michigan Court of Appeals therefore could have reasonably rejected petitioner's *Santobello* claim on the ground that the prosecutor did not in fact agree to refrain from making a sentencing recommendation. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Ineffective Assistance of Counsel*

Finally, petitioner contends that counsel was ineffective by failing to raise each of the objections asserted in his habeas claims. The Court should conclude that petitioner is not entitled to

27

habeas relief on these claims.

      1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352

(6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.     *Analysis*

Because each of petitioner's underlying claims is without merit, petitioner cannot show that counsel was ineffective for failing to raise these claims.  As explained above, the Michigan sentencing guidelines were properly scored, and thus any objection to the scoring would have been futile. The

habitual offender notice was timely under state law, and even as a matter of state law the habitual offender claim was waived by petitioner's guilty plea. *See People v. Lannom*, 441 Mich. 490, 490 N.W.2d 396 (1992) (per curiam). And because the prosecutor did not breach the plea agreement, any *Santobello* argument by counsel would have been futile. Because each of petitioner's underlying claims is without merit, petitioner cannot show that counsel was ineffective. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006) (counsel not ineffective for failing to raise meritless objection); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (same); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

G.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the

30

applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, it is clear that petitioner's guideline and habitual offender claims are not cognizable on habeas review, and it is equally clear that the guideline scoring and habitual offender notice were proper

31

under Michigan law.  Thus, the resolution of these claims is not reasonably debatable.  Further, it is clear that petitioner had no constitutional right to have the court consider mitigating evidence in sentencing him, and that the *Apprendi* rule does not (or at a minimum, did not at the time of petitioner's sentencing) apply to Michigan's indeterminate sentencing scheme.  Further, given the nature of the offense, it is clear that petitioner's sentence is not so grossly disproportionate to his offense that it violates the Eighth Amendment.  Thus, the resolution of these claims is not reasonably debatable.  Because petitioner has failed to identify any materially false factual information relied upon by the trial court in imposing sentence, or any term of the plea agreement that was breached by the prosecutor, the resolution of these claims is not reasonably debatable.  Finally, because the resolution of petitioner's underlying claims is not reasonably debatable, it follows that the resolution of petitioner's ineffective assistance claims is likewise not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: March 27, 2014                                      s/Paul J. Komives_____
                                                         PAUL J. KOMIVES
                                                         UNITED STATES MAGISTRATE JUDGE


                          **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 27, 2014.


                                        s/ Kay Doaks_____
                                        Case Manager


                                        33